**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

Case No. 1:18-cv-11826-NMG

**STEVEN SANDOE,** individually and on
behalf of all others similarly situated,

        *Plaintiff*,

*v.*

**BOSTON SCIENTIFIC CORPORATION,**
a Massachusetts corporation,

        *Defendant.*

**PLAINTIFF'S RESPONSE IN OPPOSITION TO**

**DEFENDANT'S SUMMARY JUDGMENT MOTION**

## I.     Introduction

Boston Scientific is not entitled to summary judgment on any basis identified in its motion.

Boston Scientific is not entitled to summary judgment as to its reasonable reliance defense for four independently sufficient reasons.  First, reasonable reliance is not a valid defense to Plaintiff's claim for violation of the Telephone Consumer Protection Act's prohibition against unsolicited, prerecorded voice calls.  The TCPA is a strict liability statute and requires a caller to have obtained the consent of the actual recipient of the calls, and not the intended recipient of the calls.  Second, Boston Scientific failed to plead a reasonable reliance defense.  A party cannot obtain summary judgment on an unpled claim or defense.  Third, Boston Scientific has not proffered any admissible evidence demonstrating that it had the consent of the intended recipient of its calls to Plaintiff, which is a prerequisite to its reasonable reliance defense.  And, fourth, there is a material issue of disputed fact regarding whether Boston Scientific's reliance on the intended recipient's consent was reasonable, particularly because Boston Scientific went out of its way to not verify or otherwise attempt to ensure that its prerecorded voice calls were being made to the intended recipients, as opposed to consumers like Plaintiff for whom such calls were *wrong number calls*.

Boston Scientific is also not entitled to summary judgment as to any subset of Plaintiff's prerecorded calls claim because whether Plaintiff can represent wrong number call recipients who received Boston Scientific's prerecorded calls to their landlines as opposed to their cellular phone numbers (like Plaintiff did) based on the substantively identical requirements of two related sections of the TCPA is a class certification issue not a summary judgment issue.

Boston Scientific is not entitled to summary judgment as to Plaintiff's Do Not Call registry based TCPA claim because it is undisputed that Plaintiff received Boston Scientific's on his cellular phone number while his cellular phone number was registered on the DNC. Boston Scientific had an obligation to honor that registration indefinitely, and its failure to do so confers standing on Plaintiff to pursue a DNC claim.

Finally, Boston Scientific is also not entitled to summary judgment on Plaintiff's DNC claim because there is a disputed issue of material fact regarding whether Boston Scientific's calls were telephone solicitations – i.e., made for the purpose of encouraging consumers to purchase Boston Scientific products. Among other things, the calls were made to promote events organized by Boston Scientific's sales and marketing department at which Boston Scientific intended for Boston Scientific's products to be discussed. In addition, Boston Scientific specifically represented to the doctors hosting these events that they were likely to result in increased consumer interest in Boston Scientific's products. Under these circumstances, it is far from undisputed that at least one reason for Boston Scientific's calls was to promote its chronic pain treatment products, even if another reason for its calls was to educate consumers regarding chronic pain treatments.

The Court should therefore deny Boston Scientific's motion in total.

## II.    Facts

### A.    <u>Boston Scientific Manufactures, Markets, and Sells Medical Devices</u>

Boston Scientific is a medical device manufacturer. *See* Plaintiff's Statement of Facts in Opposition to Defendant's Summary Judgment Motion, which is being filed contemporaneously with this response, at ¶ 1. Boston Scientific's medical device offerings include implantable technologies for chronic pain, including spinal cord stimulation products. *Id*. at ¶ 2. The spinal

cord stimulation products are marketed and sold by the marketing and sales departments within Boston Scientific's neuromodulation division. *Id*. at ¶ 3. ██████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████ *Id*. at ¶ 4.

Not surprisingly, ██████████████████████████

██████████████████████████████████

██████████████████████ *Id*. at ¶ 5.

### B.  Boston Scientific's Direct to Consumer Marketing

As relevant to this case, one of the primary means that Boston Scientific uses to directly market its spinal cord stimulator products to consumers is *educational* events it refers to as Focus on Diagnosis events.  *Id*. at ¶ 6.  Each Focus on Diagnosis event is sponsored, supported, and attended by Boston Scientific and hosted by a physician (i.e., an "Account") that Boston Scientific "work[s] with" who "speaks to an audience … about all of the therapies that they offer around managing chronic pain," including Boston Scientific's spinal cord stimulator products. *Id*. at ¶ 7.  The way it's intended to work is that "[t]he physician invites their own patients to 9.the event, for a Focus on Diagnosis event."  *Id*. at ¶ 8.

### C.  Boston Scientific's Prerecorded Voice Message Calls to Consumers



To that end, ██████████████████████████████

██████████████████████████████████

██████████████████████████████████████

████████ *Id*. at ¶ 9.  Notably, Boston Scientific stopped transmitting invitations using

prerecorded voice messages for Focus on Diagnosis events "around the beginning of [its] …

awareness of this lawsuit."  *Id*. at ¶ 10.



*Id*. at ¶ 11.

*Id*. at ¶ 12.

*Id*. at ¶ 13.

. *Id*. at ¶ 14.

*Id*. at ¶ 15.  Similarly,

*Id*. at ¶ 16.

at ¶ 17.

 *Id*. at ¶ 18.  Boston Scientific also ███████████████████████████████ ███████████████████████████████████ *Id*. at ¶ 19. In fact, Boston Scientific ████████████████████████████████████ ████████████████████████████████████████████ ███████████████████████ *Id*. at ¶ 20.

Notwithstanding, Boston Scientific or its agent transmitted between 1 and 3 prerecorded voice messages to each of the phone numbers supplied by the physicians, regardless of whether the phone numbers were still associated with those physicians' patients.  *Id*. at ¶ 21.  In total, prerecorded voice message invitations for Focus on Diagnosis events were transmitted by Boston Scientific to 265,948 unique phone numbers.  *Id*. at ¶ 22.

Among these calls to hundreds of thousands of consumers' phone numbers across the country that Boston Scientific did nothing to verify, were Boston Scientific's prerecorded voice calls to Plaintiff Sandoe's cellular phone number.  *Id*. at ¶ 23.  Boston Scientific obtained Plaintiff's cellular phone number from Spine Works, who obtained it from a "***former*** patient" almost 3 years before Boston Scientific made prerecorded voice calls to Plaintiff's cellular phone number on June 28, 2018 and July 6, 2018, while Plaintiff's cellular phone number was registered on the national Do Not Call registry.  *Id*. at ¶ 24.

These prerecorded calls invited Plaintiff to attend a Boston Scientific Focus on Diagnosis event which was intended "to encourage patients to engage in appropriate treatments to help alleviate their chronic pain" and at which Boston Scientific's products were expressly discussed. *Id*. at ¶ 25.  ███████████████████████████████████████ ████████████████████████████.  *Id*. at ¶ 26.  And between receiving the first prerecorded invitation call from Boston Scientific and the second invitation prerecorded

call from Boston Scientific, Plaintiff notified Spine Works that he was not the intended recipient of the calls. *Id*. at ¶ 27.

### III.   Argument

#### A.   Summary Judgment as to Boston Scientific's Unpled Reasonable Reliance Defense is Procedurally, Legally, and Factually Improper

Summary judgment as to Boston Scientific's reasonable reliance defense is unwarranted for four reasons. First, reasonable reliance is not a legally valid defense to a claim under the TCPA, which requires consent from the consumer that receives TCPA violative calls (not the intended recipient) and is otherwise a strict liability statute. Second, Boston Scientific has not pled a reasonable reliance defense and it is therefore procedurally improper for it to obtain summary judgment on such a defense. Third and fourth, even if reasonable reliance were a valid defense that Boston Scientific had timely asserted, there is no admissible evidence that Boston Scientific had consent from the intended recipient of its calls, and, even if it did, there are disputed issues of material fact regarding whether Boston Scientific's reliance on that consent was reasonable. The Court should therefore deny Boston Scientific's summary judgment motion as to its reasonable reliance defense to Plaintiff's prerecorded voice claim under § 227(b)(1).

##### i.   Summary Judgment as to the Reasonable Reliance Defense is Improper Legally Because Reasonable Reliance is Not an Applicable Defense to Plaintiff's TCPA Claims

To establish consent to make a prerecorded voice call, a TCPA defendant must demonstrate that it had the consent of the "called party." 47 U.S.C. §§ 227(b)(1)(A), (b)(1)(B). In the absence of a binding FCC interpretation as to the term "called party," courts engage in statutory construction to determine its meaning. *See Davis v. Diversified Consultants, Inc.*, 36 F. Supp. 3d 217, 223-24 (D. Mass. 2014) (finding that the call recipient had standing to pursue TCPA claims for calls to another intended recipient and explaining: "'The TCPA is essentially a

strict liability statute' and 'does not require any intent for liability except when awarding treble damages.'"); *see also Williams v. Bluestem Brands, Inc.,* No. 8:17-cv-1971-T-27AAS, 2017 U.S. Dist. LEXIS 206701, at *2-3 (M.D. Fla. Dec. 15, 2017) ("Notwithstanding, if the D.C. Circuit overturns the FCC's July 10, 2015 Order, the Eleventh Circuit's interpretation of 'called party' in *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1252 (11th Cir. Mar. 28, 2014) (rejecting the argument that the 'intended recipient' is the 'called party') will remain controlling precedent.").

In doing so, every circuit court and nearly every district court to opine on the issue has concluded that the term "called party" means the consumer that actually receives a defendant's TCPA violative calls, as opposed to the "intended recipient" of those calls – a term that does not appear in the TCPA.  *E.g., Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1250-54 (11th Cir. 2014) (citing *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 639-41 (7th Cir. 2012): "'The presumption that a statute uses a single phrase consistently, at least over so short a span … implies that the consent must come from the current subscriber.'"); *see Davis*, 36 F. Supp. 3d at 223-24 ("The term 'intended recipient,' however, appears nowhere in § 227.").  By expressly requiring consent from the "called party" – i.e., the person that receives a defendant's calls – the TCPA precludes "rel[iance] on a good faith exemption to the consent requirement."  *See Pieterson v. Wells Fargo Bank, N.A.*, No. 17-cv-02306-EDL, 2018 U.S. Dist. LEXIS 113125, at *10 (N.D. Cal. July 2, 2018); *Davis*, 36 F. Supp. 3d at 223-24 ("'The TCPA is essentially a strict liability statute' and 'does not require any intent for liability except when awarding treble damages.'").

Boston Scientific's argument here, that it is entitled to rely on the consent of the intended recipient of its calls if its reliance was reasonable was expressly rejected a few months ago in a

case like this one involving a reassigned number.  In that case, *Jiminez v. Credit One Bank, N.A.*, 377 F. Supp. 3d 324, 334-35 (S.D.N.Y. 2019), the court found (as Plaintiff maintains) that a reasonable reliance defense has "no basis in the text of the TCPA" and is not a valid defense post-*ACA International* (as Boston Scientific otherwise argues):

> The reassignment of a number creates no relationship between the prior, consenting holder and the new holder. Thus, there is no reasonable basis for reliance on the original holder's consent as indicative of consent by the new user. Indeed, in a portion of the 2015 Order that the *ACA International* court later rejected, the FCC observed that there was "no basis in the statute or the record before us to conclude that callers can reasonably rely on prior express consent beyond one call to reassigned numbers" (2015 Order ¶ 90 n.312), and framed a very limited "reasonable reliance approach" by providing only a one-call safe harbor for reassigned numbers. Accordingly, the Court declines Defendants' invitation to recognize a reasonable reliance exception or defense that is inconsistent with the plain language of the statute.

*Jiminez*, 377 F. Supp. 3d at 334-35.

The cases Boston Scientific relies on do not support a contrary conclusion.  *E.g., Roark v. Credit One Bank, N.A.*, No. 16-173 (PAM/ECW), 2018 U.S. Dist. LEXIS 193252, at *8 (D. Minn. Nov. 13, 2018) (finding, without any analysis, that, post *ACA International*, "[t]o determine whether there has been a violation of this section of the TCPA under current authority, the Court must consider the reasonableness of the caller's reliance on a prior number holder's express consent"); *AMP Auto., LLC v. B F T, LP*, No. 17-5667, 2019 U.S. Dist. LEXIS 52793, at *8-9 (E.D. La. Mar. 28, 2019) (relying on FCC's one-call safe harbor for TCPA violative calls invalidated in *ACA International* to deny summary judgment in wrong number fax case).

There is therefore no basis to conclude that the TCPA – a strict liability statute – affords defendants in wrong number cases a reasonable reliance affirmative defense.  *See Davis*, 36 F.

Supp. 3d at 223-24 ("'The TCPA is essentially a strict liability statute' and 'does not require any intent for liability except when awarding treble damages.'").

> **ii. Summary Judgment as to the Reasonable Reliance Defense is Procedurally Improper Because Boston Scientific Did Not Plead it in its Answer**

When reasonable reliance is relevant to a federal statutory claim (unlike with Plaintiff's TCPA prerecorded voice call claim in this case), it constitutes an affirmative defense. *See, e.g., SEC v. Esposito*, Civil Action No. 1:16-cv-10960-ADB, 2017 U.S. Dist. LEXIS 192120, at *5-6 (D. Mass. Nov. 21, 2017) (finding that although reasonable reliance constitutes an affirmative defense, it is not an applicable defense to claims under strict liability statutes); *In re MF Glob. Holdings Sec. Litig.*, 982 F. Supp. 2d 277, 322 (S.D.N.Y. 2013) ("Because the affirmative defense turns on an evaluation of reasonableness, whether the defense is available 'is generally a fact issue, rarely suitable for summary judgment, let alone a motion to dismiss.'").

"[A] party must first raise its affirmative defenses in a responsive pleading before it can raise them in a dispositive motion." *Harris v. Sec'y, United States Dep't of Veterans Affs.*, 126 F.3d 339, 345 (D.C. Cir. 1997); *Pain v. Prof'l Mortg. Assoc.*, No. CV-12-1181-PHX-SMM, 2014 U.S. Dist. LEXIS 198457, at *6 (D. Ariz. Sep. 29, 2014) ("Though the moving party is not constrained as to what claims or defenses are submitted in a motion for summary judgment, the Court may disregard unpled claims or defenses."); *see also Fed. Deposit Ins. Corp. v. Ramirez-Rivera*, 869 F.2d 624, 626 (1st Cir. 1989) (holding that a defendant's failure to plead an affirmative defense results in waiver of the defense). "The reason why affirmative defenses under Rule 8(c) must be pled in the answer is to give the opposing party notice of the defense and a chance to develop evidence and offer arguments to controvert the defense." *Knapp Shoes, Inc. v. Sylvania Shoe Mfg. Corp.*, 15 F.3d 1222, 1226 (1st Cir. 1994).

Because Boston Scientific has failed to plead a reasonable reliance defense, it cannot obtain summary judgment on a reasonable reliance defense (which, in any event, does not apply to claims under the TCPA, a strict liability statute).

### iii.   Summary Judgment as to the Reasonable Reliance Defense is Factually Improper Because Boston Scientific Fails to Show that It Had Consent from the Intended Recipient of the Calls to Plaintiff, a Prerequisite to Its Reasonable Reliance Defense

It is axiomatic that for Boston Scientific to establish that it reasonably relied on consent from the intended recipient of the calls it ultimately made to Plaintiff's cellular phone number to defeat Plaintiff's prerecorded voice calls claim under 47 U.S.C. § 227(b)(1)(A)(iii), Boston Scientific must establish that the intended recipient consented to be called by Boston Scientific. Boston Scientific does not present any admissible evidence demonstrating that the intended recipient provided express consent to be called by Boston Scientific or by the Boston Scientific account (Spine Works) that may have supplied Plaintiff's cellular phone number to Boston Scientific.  Boston Scientific's only summary judgment evidence to establish the intended recipient's consent is the declaration of Dr. Jeff Phelps.

Dr. Phelps states that the intended recipient of the calls to Plaintiff "was a ***former*** patient."  Dr. Phelps declaration [D.E. 63] at ¶ 2.  Dr. Phelps then avers that this former patient "provided her phone number at the time she filled out [Spine Works'] initial intake forms and indicated that this was a number at which Spine Works could contact her." *Id.* at ¶¶ 1- 2.

The intended recipient of the calls to Plaintiff has not testified in this case that she provided the cell phone number in question to Spine Works or that she indicated that it was a number at which Spine Works could contact her.  Boston Scientific instead relies on Dr. Phelps's assertion that she did to establish her consent.  This evidence of consent is inadmissible hearsay. Fed. R. Evid. 801(a).  "Hearsay evidence, inadmissible at trial, cannot be considered on a motion

10

for summary judgment." *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990).  Notably,

Dr. Phelps does not attach the initial intake forms, and neither he nor Boston Scientific otherwise

provide any evidence to support an exception to the rule against hearsay.  *See, e.g.,* Fed. R. Evid

803(a)(4) (limiting medical treatment of diagnosis exception to statements that "describe medical

history; past or present symptoms or sensations; their inception; or their general cause"); Fed. R.

Evid. 803(a)(6) (requiring a party relying on the business records exception to furnish a copy of

the record relied on in the declaration and a certification that the record meets the requirements

of Fed. R. Evid. 803(a)(6)(A)-(C)).  "Where the evidentiary matter in support of the motion does

not establish the absence of a genuine issue, summary judgment must be denied even if no

opposing evidentiary matter is presented." *Petricca v. City of Gardner*, 429 F. Supp. 2d 216, 224

(D. Mass. 2006) (Gorton, J.) (quoting Fed. R. Civ. P. 56(e) advisory committee's note (1963

amendment) and denying motion for summary judgment on negligence and malfeasance where

movants failed to support their motion with competent evidence).

Dr. Phelps's declaration is therefore insufficient to establish prior express written consent

or even the lesser prior express consent from the purported intended recipient of Boston

Scientific's prerecorded voice calls to Plaintiff.  In the absence of any other evidence of consent

from the intended recipient of the calls, Boston Scientific is not entitled to summary judgment on

its defense predicated on its reasonable reliance on the intended recipient's consent.

> ### iv.   Summary Judgment as to the Reasonable Reliance Defense is also Factually Improper Because, even if Boston Scientific had Consent from the Intended Recipients of its Calls to Plaintiff, there are Disputed Issues of Fact Regarding Whether Boston Scientific's Reliance on that Consent was Reasonable

Assuming, for argument's sake, that Boston Scientific had the intended recipient's

consent to make prerecorded voice calls to Plaintiff's cellular phone number, there are disputed

issues of fact regarding whether Boston Scientific's reliance on that consent was reasonable.   In the TCPA context, whether a caller's reliance on the intended party's consent was reasonable turns on whether the caller knew or should have known that it was calling a wrong number.  *See AMP Auto.*, 2019 U.S. Dist. LEXIS 52793, at *8-9 (explaining that "'caller best practices can facilitate detection of reassignments before calls'"); *Roark*, 2018 U.S. Dist. LEXIS 193252, at *8-9 (finding that reliance was reasonable in part because when the called party returned missed calls from the defendant, "the [defendant's] caller I.D. for the number still populated with [the intended recipient's] information" and not the called party's information); *see Field v. Mans*, 516 U.S. 59, 77 (1995) (distinguishing a "reasonable reliance" standard, which imposes a duty to investigate, from a "justifiable reliance" standard, which does not impose a duty to investigate); *In re MF Glob. Holdings Sec. Litig.*, 982 F. Supp. 2d at 322 (explaining that reasonableness depends on the facts and context of a particular case, and therefore "'is generally a fact issue, rarely suitable for summary judgment, let alone a motion to dismiss.'").

Here, the facts and circumstances establish that there is a disputed issue of fact as to whether Boston Scientific's reliance was reasonable.  Specifically, Boston Scientific engaged in a nationwide calling campaign resulting in prerecorded calls to hundreds of thousands of consumers' phone numbers.  Notwithstanding, █████████████████████
███████████████████████████████████████████
███████████████████████████████████████
█████████████████████████████████████████
█████████████████████████████████████████
█████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████

In fact, Boston Scientific went out of its way to setup the calling campaign so that, among other things, consumers receiving wrong number calls could not identify Boston Scientific or notify Boston Scientific that they were not the intended recipients of the calls.  And, in fact, Plaintiff specifically testified that this is what occurred here:  he notified Boston Scientific's account, Spine Works, that he was not the intended recipient of Boston Scientific's prerecorded calls after receiving the first call, but before receiving the second one.

Under these circumstances, at a minimum, an issue of fact exists regarding whether Boston Scientific's reliance on consent from the intended recipient was reasonable.

> **B.  Whether Plaintiff Can Pursue a Prerecorded Voice Claim for Calls to Residential Lines in Addition to a Prerecorded Voice Call Claim for Calls to His Cellular Phone Number is a Matter for Class Certification, Not Summary Judgment**

Plaintiff asserts a prerecorded voice claim pursuant to 47 U.S.C. § 227(b)(1).  Boston Scientific seeks summary judgment on Plaintiff's prerecorded voice claim to the extent it is brought under § 227(b)(1)(B), which applies to prerecorded voice calls to residential lines, as opposed to under § 227(b)(1)(A)(iii), which applies to prerecorded voice calls to cellular phone numbers.  Plaintiff does not dispute that he received Boston Scientific's unsolicited, prerecorded voice calls at his cellular phone number.  Notwithstanding, Plaintiff has asserted his prerecorded voice claim under § 227(b)(1) on behalf of the class because, for purposes of this litigation, claims by wrong number recipients of Boston Scientific's calls are substantively the same, regardless of whether the calls were received on a cellular phone number or a residential line. This is because sections 227(b)(1)(A)(iii) and (b)(1)(B) statutorily restrict the same conduct and remedy the same injury.  *Charvat v. Travel Servs.*, No. 12-cv-05746, 2016 U.S. Dist. LEXIS

34954, at *9-10 (N.D. Ill. Mar. 17, 2016).  The "injury or statutory violations are not unique to either."  *Id*.

Specifically, 47 U.S.C. § 227(b)(1)(A)(iii) makes it "unlawful" to (1) "make any call" (2) "using … an artificial or prerecorded voice" (3) "to any telephone number assigned to a … cellular telephone service."  For a prerecorded voice call to a cell phone number that "constitutes telemarketing," the TCPA requires a company to obtain the "prior express written consent of the called party" before making the call to avoid liability.  47 C.F.R. § 64.1200(a)(2); *see also* 47 C.F.R. § 64.1200(f)(12) ("The term telemarketing means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person.").  However, if the prerecorded voice call delivers a "health care message," even if the call otherwise constitutes telemarketing, a lower level of consent ("prior express consent") is required.  *Id*.

The TCPA's substantively identical prohibition on prerecorded voice calls to "residential lines,"  47 U.S.C. § 227(b)(2), also requires a company to obtain the "prior express written consent of the called party" before making a call that "constitutes telemarketing", unless the call delivers a "health care message," in which case no consent is required.  47 C.F.R. § 64.1200(a)(3).  Notably, however, as a matter of law, a call does not deliver a "health care message," if it is not made on behalf of the recipient's physician, it does not concern the health care of the recipient, and it does not concern the administration of medication prescribed to the recipient; i.e., the health care message exception does not apply to calls made to wrong numbers. *Zani v. Rite Aid Headquarters Corp*., 246 F. Supp. 3d 835, 849-52 (S.D.N.Y. 2017) ("The calls were … made within the confines of an established health care treatment relationship."); *see Bailey v. CVS Pharm., Inc.*, No. 27-cv-22482, 2018 U.S. Dist. LEXIS 137049, at *15 (D.N.J. Aug. 14, 2018) ("Here, all three factors are present … the text messages were limited only to

14

CVS customers who enrolled or consented to the CVS Ready Text Program").

Accordingly, the claims against Boston Scientific, including the consent requirement, under § 227(b)(1)(A)(iii) and § 227(b)(1)(B) are substantively the same, and Plaintiff should be permitted to seek certification of a class of cellular phone number and landline recipients of Boston Scientific's wrong number calls. *See Dobkin v. Enter. Fin. Group, Inc.*, No. 2:14-cv-01989, 2014 U.S. Dist. LEXIS 123317, at *17-18 (D. N.J. Sept. 3, 2014) ("While EFG's argument points to a difference between Plaintiff's claim and those of other potential class members, in that class members may have received unlawful calls to wireless phones instead of landline phones, this issue is best addressed at the class certification stage.").

### C. Plaintiff Has Standing to Pursue a DNC Claim Regardless of Whether He Personally Registered His Cellular Phone Number on the DNC

At both the time Plaintiff was assigned the cellular phone number at which he received Boston Scientific's calls and at the time of the calls, Plaintiff's number was validly registered on the DNC. Despite these uncontested facts, Boston Scientific argues that Plaintiff is not entitled to pursue a DNC provision based claim because he did not personally register his cell phone number on the DNC. This is a misstatement of the law.

The FCC's regulations permit only a "residential telephone subscriber" to register "his or her telephone number" on the DNC. 47 C.F.R. § 64.1200(c)(2). Once a telephone number is registered on the DNC, the "registrations must be honored indefinitely, or until the registration is cancelled by the consumer of the telephone number is removed by the database administrator." *Id*. The TCPA's DNC standing provision allows any "person who has received" a call in violation of the FCC's regulations to sue. 47 U.S.C. § 227(c)(5).

Regardless of whether Plaintiff himself registered the cellular phone number on the DNC, at the time of Boston Scientific's calls to Plaintiff, under 47 C.F.R. § 64.1200(c)(2), Boston

Scientific was nonetheless required to honor the prior registration of Plaintiff's cellular phone number on the DNC "indefinitely," but undisputedly did not do so.  *See* 16 C.F.R. § 310.4(b)(iii)(B) ("It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to … initiat[e] any outbound telephone call to a person when … [t]hat person's telephone number is on the 'do-not-call' registry, maintained by the Commission."). Accordingly, pursuant to TCPA's DNC provision, Plaintiff as "a person who has received" Boston Scientific's calls to a phone number on the DNC that Boston Scientific was prohibited from calling indefinitely after it was registered by a subscriber (regardless of whether it was registered by Plaintiff), has standing to pursue a DNC based claim.  *See Krakauer v. Dish Network, LLC*, 311 F.R.D. 384, 391-92 (M.D.N.C. 2015) ("Dish's argument that only the subscriber has standing to sue under Section 227(c) appears to focus on the provisions allowing subscribers to register their numbers on the NDNC list, *see id*. § 227(c)(1)-(3), and ignores the broader standing provision of Section 227(c)(5).") *aff'd* 925 F.3d 643 (4th Cir. 2019).

The interpretation Boston Scientific seeks would thwart the purposes of the DNC because it would preclude consumers who are reassigned previously abandoned phone numbers that have previously been registered on the DNC from being able to register their numbers and obtain the protections of the DNC if the registrations for those numbers were not "cancelled by the consumer[s]" that initially registered the numbers or "removed by the database administrator." 47 C.F.R. § 64.1200(c)(2).  Ultimately, the TCPA is a consumer protection statute that must be liberally construed for the benefit of consumers, and not in the restrictive way Boston Scientific demands.  *See United States v. Dish Network LLC*, 75 F. Supp. 3d 916, 936 (C.D. Ill. 2014) ("Dish's argument is not persuasive. The TSR does not say the call must be initiated to the person who registered the number on the Registry. The TSR states that a violation occurs if the

telemarketing call is initiated to a person when the person's telephone number is on the Registry. Consumer protection statutes are remedial in nature and are to be construed liberally to effectuate the goals of protecting consumers. ... Dish's narrow reading of the Rule violates this principle of construction. The Court's interpretation is consistent with the plain meaning of the language and consistent with the principle of liberal construction. If the call is initiated to a number on the Registry, then the call is initiated to the person who held that telephone number at the time of the call in violation of the Rule.").

### D.  There are Disputed Issues of Fact Regarding Whether Boston Scientific's Calls to Plaintiff Were Telephone Solicitations

A prerecorded voice call is a telephone solicitation if it is sent "for the *purpose* of encouraging the purchase or rental of, or investment in, property, goods, or services."  47 CFR 64.1200(f)(14) (emphasis supplied).  A call constitutes a telephone solicitation even if it "serves a 'dual purpose'—that is, includes both advertising/telemarketing *and* merely informational or transactional communications."  *Chesbro v. Best Buy Stores, L.P.*, 70 F.3d 913, 917-18.  Calls that are made for a customer service purpose are still telephone solicitations under the TCPA if at least one other purpose for making the calls is to promote the sale of goods or services.  *Id.*

In fact, calls that relate to customer service campaigns are "an extension of sales" and telemarketing if they are a way to keep "that customer happy and engaged" with the caller's brand. *Carroll v. SGS N. Am., Inc.*, No. 16-537-SDD-RLB, 2017 U.S. Dist. LEXIS 154170, at *9 (M.D. La. Sep. 21, 2017) (denying defendant's motion for summary judgment because "the purpose for the phone calls was dual - customer service and to solicit future sales and revenues"). More specifically, a conclusion of telemarketing is warranted when the calling campaign is "handled by ... individuals [that] were hired to work as salespeople, were trained to work as salespeople, were evaluated based on their ability to sell, and were compensated based on the amount of sales they made." *Bennett v. GoDaddy.com LLC*, No. CV-16-03908-PHX-ROS, 2019

U.S. Dist. LEXIS 59766, at *72-73 (D. Ariz. Mar. 15, 2019) (granting class certification and explaining that these facts were common proof that the defendant's calls were telemarketing).

Ultimately, "[n]either the statute nor the regulations require an explicit mention of a good, product, or service where the implication is clear from the context." *Chesbro*, 70 F.3d at 917-18. In fact, it is sufficient if the call is made as part of a campaign intended to "encourage[]" recipients "to make future purchases." *Id*. The telemarketing inquiry "should turn, not on the caller's characterization of the call, but in the purpose of the message." *Id*. Therefore, courts evaluating whether calls are telephone solicitations evaluate the context of the calls and otherwise "approach the problem with a measure of common sense." *Id*.; *see Bennett v. Boyd Biloxi, LLC*, No. 14-0330-WS-M, 2015 U.S. Dist. LEXIS 59632, at *9 (S.D. Ala. May 6, 2015) ("Applying these principles to the regulatory definition of telemarketing, the question is whether, viewed through the lens of common sense, one purpose of the defendant in calling the plaintiff was to encourage him to buy goods or services in the future, and neither the defendant's failure to mention any particular goods or services nor a second purpose of offering free tickets is inconsistent with such a purpose.").

Here, Boston Scientific's prerecorded calls constitute telephone solicitations because the Focus on Diagnosis events they invited consumers to were for the purpose of encouraging consumers to purchase Boston Scientific products even if they were also to educate consumers or otherwise provide them a beneficial service (like customer service). Specifically, ████████

████████████████████████████████████████████████████████████

████████████████████████████████  ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

18

██████████████████████████████████████████████

████████████████████████████

While the substance of any one specific event and whether Boston Scientific's products were specifically referenced during that event is ultimately irrelevant to the question of whether the purpose of the events – and for making calls to invite consumers to the events – was to encourage consumers to purchase Boston Scientific's products, it is undisputed that the Spine Works event Plaintiff was invited to did include specific references to Boston Scientific and its products.  At a minimum, this is sufficient to establish a disputed issue of material fact regarding whether one purpose of Boston Scientific's calls and events was to encourage the purchase of Boston Scientific products, even if another purpose of the calls and events was to educate consumers regarding chronic pain treatments.

None of the cases cited by Boston Scientific support a different conclusion.  To the contrary, all of Boston Scientific's cases involve calls made for the purpose of offering to hire or purchase something from the call recipient. *E.g., Payton v. Kale Realty, Ltd. Liab. Co.*, 164 F. Supp. 3d 1050, 1063 (N.D. Ill. 2016) ("the intent of the message is not to encourage an individual to purchase any of Kale's services but rather to inform plaintiffs about an opportunity to become an independent contractor for Kale"); *Orea v. Nielsen Audio, Inc.*, No. 14-cv-04235-JCS, 2015 U.S. Dist. LEXIS 54916, at *3 (N.D. Cal. Apr. 24, 2015) ("Plaintiff argues that Defendant's calls are telephone solicitations because Defendant called Plaintiff 'to purchase his labor and information'"); *Friedman v. Torchmark Corp.*, No. 12-CV-2837-IEG (BGS), 2013 U.S. Dist. LEXIS 114321, at *17 (S.D. Cal. Aug. 13, 2013) ("Even in the FAC, Plaintiff still only alleges that the messages invited him to learn about Defendant's products in order to potentially sell them to others.").  Those are not the circumstances here, where Boston

Scientific's sales and marketing department organized Focus on Diagnosis events to increase sales of Boston Scientific products and then caused prerecorded voice calls to be made inviting consumers to those events.

The Court should therefore deny Boston Scientific's summary judgment motion as to whether its prerecorded voice calls were telephone solicitations.

## IV.    Conclusion

Boston Scientific is not entitled to summary judgment on its reasonable reliance defense because it is inapplicable to TCPA, unpled by Boston Scientific, and factually disputed.  Boston Scientific is not otherwise entitled to summary judgment on Plaintiff's prerecorded voice claim because whether Plaintiff can represent absent class members that received Boston Scientific's wrong number calls on their landlines as opposed to their cellular phone numbers is a class certification issue.  Boston Scientific is not entitled to summary judgment on Plaintiff's DNC claim because Plaintiff has standing to pursue a claim for calls to him while his cellular phone number was registered on the DNC, even if Plaintiff did not register it, and it is factually disputed whether Boston Scientific's calls were telephone solicitations.

The Court should therefore deny Boston Scientific's summary judgment motion.

Dated: August 8, 2019                          */s/ Jason Campbell*
                                               Jason Campbell Esq.
                                               250 First Avenue, Unit 602
                                               Charlestown, MA 02129
                                               (617) 872-8652
                                               jasonrcampbell@ymail.com

                                               Avi R. Kaufman
                                               kaufman@kaufmanpa.com
                                               Kaufman P.A.
                                               400 NW 26th Street
                                               Miami, FL 33127
                                               Telephone: (305) 469-5881

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 8, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, and it is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

*/s/ Jason Campbell*