# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

STEVEN SANDOE, individually and on behalf of all others similarly situated,

        Plaintiff,

v.

BOSTON SCIENTIFIC CORPORATION,

        Defendant.

Case No. 1:18-cv-11826-NMG

**REPLY MEMORANDUM IN SUPPORT OF BOSTON SCIENTIFIC'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S INDIVIDUAL CLAIMS**

**INTRODUCTION**

In his opposition, Plaintiff either does not dispute,[1] or outright concedes, the fundamental premises underlying Boston Scientific's summary judgment motion against each of his claims.

**Calls to a Residential Line.** Plaintiff admits that he received the calls at issue on a cellular telephone, not on a "residential telephone line," as a claim under 47 U.S.C. § 227(b)(1)(B) requires.

**Calls to a Cell Phone.** Plaintiff does not dispute that Boston Scientific believed it was calling S.B., a Spine Works Institute ("Spine Works") clinic patient, when it called him. Nor does he dispute that the FCC—the agency tasked with implementing the TCPA—interprets the TCPA to not "demand the impossible" of callers by requiring strict liability for calls to reassigned numbers that have been reassigned unbeknownst to the caller, but instead permits callers to rely on the prior user's consent when the reliance is reasonable.

**Do-Not-Call Violations.** Plaintiff concedes that he did not register his cellular number on the Do-Not-Call list (and did not even know it was registered until his lawyer told him), even though 47 C.F.R. § 64.1200(c) protects only a "subscriber who has registered his or her telephone number" on the list. Plaintiff also does not dispute that the calls at issue (and the seminars they referenced) never encouraged, implicitly or explicitly, the purchase of a Boston Scientific product.

These undisputed facts are dispositive, for the reasons described below.

**ARGUMENT**

**I.    Plaintiff Concedes That He Did Not Receive a Call on a Residential Telephone Line.**

In its opening brief, Boston Scientific demonstrated that Plaintiff's TCPA claim for calls to a "residential telephone line," *see* 47 U.S.C. § 227(b)(1)(B), must be dismissed because he received the

---

[1] Plaintiff did not oppose any of Boston Scientific's Undisputed Material Facts, and those facts are deemed admitted for purposes of this motion. Fed. R. Civ. P. 56(c)(1); D. Mass. L. R. 56.1. Boston Scientific's Reply Statement of Undisputed Facts responds to Plaintiff's separate assertion of facts and shows that any purportedly "disputed" material facts are either undisputed or mischaracterized.

1

calls at issue only on his cellular telephone. *See* Mem.[2] 11–12, citing *McDermet v. John C. Heath, Attorney at Law, PLLC*, 2018 WL 627371, at *2–3 (D. Mass. Jan. 30, 2018).

Plaintiff does not dispute that he received the calls on his cell phone, not a residential line, but he claims that he can assert a section 227(b)(1)(B) claim on behalf of **other** individuals who may have received calls to their residential lines. Opp. 13–15. Whether Plaintiff can represent those who received residential calls—a class-certification issue—is irrelevant to this summary judgment motion. Here, Plaintiff must bring forth evidence for each element of his **individual** claim. *See Davis v. Diversified Consultants, Inc.*, 36 F. Supp. 3d 217, 223 (D. Mass. 2014). Plaintiff cannot do so because he admits he did not receive a call on his residential telephone line, which is one of the elements of his claim. *See* 47 U.S.C. § 227(b)(1)(B) (prohibiting calls to "any residential telephone line"). The Court should therefore enter summary judgment on Plaintiff's individual section 227(b)(1)(B) claim.

**II.     Plaintiff's Strict-Liability Approach for Calls to Reassigned Numbers Is Not the Law.**

In its opening brief, Boston Scientific showed that: (1) a prior user of Plaintiff's number gave TCPA consent to receive the calls at issue; (2) Boston Scientific tried to call this consenting user, not knowing the number was reassigned to Plaintiff; and (3) in these circumstances, the FCC "interprets the [TCPA] to not demand the impossible of callers," *In the Matter of Advanced Methods to Target & Eliminate Unlawful Robocalls*, 33 F.C.C. Rcd. 12024, ¶ 58 (2018), but instead permits Boston Scientific to reasonably rely on the prior user's consent, as Boston Scientific did here. Mem. 12–16.

Plaintiff responds with a kitchen sink full of arguments, but for the reasons below, none of those arguments is persuasive.

**A.     The FCC interprets the TCPA to allow a reasonable-reliance approach.**

The issue before the Court is not whether a caller must demonstrate that it had the consent of the "called party," as the statute requires, *see* 47 U.S.C. § 227(b)(1)(A), or whether the term "called

---

[2] Boston Scientific refers to its opening brief as "Mem." and to Plaintiff's opposition as "Opp."

2

4810-8549-8787.1

party" typically means the individual that receives the calls, as Boston Scientific agrees. The issue, instead, is whether on these facts—where the prior user of the number has given consent and the number is reassigned unbeknownst to the caller—the TCPA applies strict liability to the calls or instead permits a reasonable-reliance analysis. The First Circuit has not addressed the issue, and district courts are split. *Compare Jiminez v. Credit One Bank*, 377 F. Supp. 3d 324, 334–35 (S.D.N.Y. 2019), *with Roark v. Credit One Bank*, 2018 WL 5921652, at *3 (D. Minn. Nov. 13, 2018).

But the FCC has addressed the issue, and its guidance is definitive. *See* 47 U.S.C. § 227(b)(2) (authorizing the FCC to implement the TCPA). In 2015, the FCC imposed a one-call safe harbor for calls to reassigned numbers and rejected the strict-liability approach that Plaintiff champions. *See In the Matter of Rules & Regulations Implementing the TCPA*, 30 F.C.C. Rcd. 7961 ¶¶ 72–73 (2015). Although the D.C. Circuit rejected the safe harbor, it did so **not** because the TCPA required strict liability for calls to reassigned numbers but because the FCC failed to explain why the concept of reasonable reliance did not extend **beyond** the first call. *ACA Int'l v. FCC*, 885 F.3d 687, 707 (D.C. Cir. 2018). The FCC then reiterated a reasonable-reliance approach and created a reassigned-numbers database to protect callers relying on it to make a call. 33 F.C.C. Rcd. 12024, ¶ 58 ("12/12/2018 FCC Order").

The FCC's guidance regarding calls to reassigned numbers is controlling. The 12/12/2018 FCC Order noted that the FCC was "interpreting" the TCPA "to not demand the impossible of callers"—i.e., not requiring them to divine, without any evidence, that a number has been reassigned to a non-consenting party. By not "demand[ing] the impossible," the FCC rejected TCPA strict liability on these facts and instead permits a caller to reasonably rely on the consent of the prior user when the number is reassigned without the caller's knowledge. The FCC's creation of a reassigned-numbers database is predicated on this interpretation, and it binds this Court under the Hobbs Act. *See Blow v. Bijora, Inc.*, 855 F.3d 793, 802 (7th Cir. 2017) ("Thus absent a direct appeal to review the

3

2015 FCC Order's interpretation . . . we are bound to follow it."); *see also Brown v. Bank of Am.*, 457 F. Supp. 2d 82, 88 (D. Mass. 2006) (granting summary judgment by retroactively applying agency interpretation because an "agency has the power to say what the law always has been"). Even if the guidance were not binding,[3] "it would be absurd to ignore the [FCC's] current authoritative pronouncement of what the [TCPA] means." *See Smiley v. Citibank (S.D.)*, 517 U.S. 735, 744 n.3 (1996). The Court should side with the district courts that have relied on the FCC's guidance, *see Roark*, 2018 WL 5921652, at *3 (holding, "under current authority," that it "must consider the reasonableness of the caller's reliance"), and disregard the district courts that have not, *see Jiminez*, 377 F. Supp. 3d at 334–36 (failing to consider the 12/12/2018 FCC Order).

      **B.**      **Boston Scientific did not waive its reasonable-reliance argument.**

Plaintiff next argues that, even if reasonable reliance applies, Boston Scientific waived that argument by not raising it in its answer. Opp. 9–10. Plaintiff is wrong again. Boston Scientific is not arguing, and the FCC did not find, that "reasonable reliance" is a **new** affirmative defense under the TCPA. 12/12/2018 FCC Order, 33 F.C.C. Rcd. 12024, ¶ 58 (noting that the safe harbor isn't an "exemption" from the TCPA "but rather a means to come into compliance"). Instead, the FCC merely applied an old defense—prior express consent—to avoid "demand[ing] the impossible" of callers who dial numbers that they do not know have been reassigned to new subscribers. *Id.*

Boston Scientific pleaded prior express consent as an affirmative defense. *See* Dkt. 9 at 6. Plaintiff was on notice as to the scope of Boston Scientific's consent defense, too, because the answer noted that Boston Scientific "placed calls inviting **what it believed to be patients of the Spine Works Institute** to an educational seminar." *Id.* ¶¶ 17, 18. Further, Boston Scientific

---

[3] The Supreme Court has analyzed, but not resolved, the Hobbs Act's application to FCC rulings. *PDR Network v. Carlton & Harris Chiro., Inc.*, 139 S. Ct. 2051 (2019). But whether assessed under the Hobbs Act or under *Chevron*, the result is the same. *Leyse v. Clear Channel Broad., Inc.*, 545 F. App'x 444, 454 (6th Cir. 2013) (analyzing FCC Order under both *Chevron* and the Hobbs Act).

answered interrogatories noting that Plaintiff's "number was previously assigned to [S.B.] and was provided by her" to Spine Works, and that "patients consented to receive the calls by providing their phone numbers" to clinics. Dkt. 39-4, Answer Nos. 3 & 9. Plaintiff thus had full "notice of the defense and a chance to develop evidence and offer arguments" against it, *Knapp Shoes, Inc. v. Sylvania Shoe Mfg. Corp.*, 15 F.3d 1222, 1226 (1st Cir. 1994), as he proved by vigorously litigating the issue. Boston Scientific did not waive its arguments on reasonable reliance.

### C. The undisputed record contains sufficient evidence of S.B.'s consent.

Next is Plaintiff's argument that Boston Scientific failed to adduce sufficient evidence of S.B.'s consent by relying on hearsay evidence. Opp. 10–11. Plaintiff again misses the mark.

#### 1. The "prior express consent" standard applies.

Plaintiff argues that the calls required "prior express written consent," because they were marketing calls. Opp. 14. The calls were not marketing calls, *see* Mem. 17–18, but the Court need not resolve that question because the calls fall under the FCC's Health Care Rule, which provides that calls that deliver a "health care" message "by, or on behalf of," a "covered entity" require only prior express consent. *See* 47 C.F.R. § 64.1200(a)(2).

Boston Scientific indisputably called Plaintiff "on behalf of" S.B.'s clinic, a HIPAA "covered entity." *See* 45 C.F.R. § 160.103 (defining "covered entity"). The two messages that Plaintiff received stated "this is a call **on behalf of** Dr. Joshua Hay with Spine Works Institute." *See* Mem. 7–8.

The relevant question, then, is whether the calls delivered a "health care" message. *See* 47 C.F.R. § 64.1200(a)(2). Courts apply three factors that, although not dispositive, "may be material" to the analysis. *See, e.g., Zani v. Rite Aid Headquarters Corp.*, 246 F. Supp. 3d 835, 851 (S.D.N.Y. 2017), *aff'd* 725 F. App'x 41, 44 (2d Cir. 2018). *Zani* held that this test was satisfied where a pharmacy sent text messages to alert patients that medication was available to treat a health issue "for which they had previously sought care." *Id.* at 852. The test is satisfied here, too.

5

**First**, Boston Scientific's calls "concern[ed]" a "product or service that is inarguably health-related," *Zani*, 246 F. Supp. 3d at 851, because it informed clinic patients about seminars that would educate them about "treatment options for chronic pain" and "encourage" them to engage in treatments to help their chronic pain. Mem. 8. This evidence is all the Court needs. Although Plaintiff argues that the calls were marketing, evidence of a marketing purpose is "not material" to the analysis, and because the Health Care Rule is an "exception" to the FCC's Telemarketing Rule, it may apply "even where a message contains an advertisement." 246 F. Supp. 3d at 853, 855–59; *Zani*, 725 F. App'x at 44 (assuming a marketing purpose but noting that the Health Care Rule "excepts these messages from the normal requirements imposed on telemarketing messages").

**Second**, the calls were made "on behalf of" Spine Works and were directed to a patient, S.B., with whom Spine Works had "an established health care treatment relationship." *Zani*, 246 F. Supp. 3d at 851. Plaintiff argues that wrong-number calls can never satisfy the Health Care Rule, *see* Opp. 14, but as described above, this would "demand the impossible" for calls to reassigned numbers, and Plaintiff cites no case holding that a "health care" message ceases to be so merely because it reaches an unintended recipient. Here, it is undisputed that the content and purpose of the call was a health care message on behalf of the Spine Works clinic, inviting S.B. to an educational seminar to learn about relevant treatment options. There is no dispute that Boston Scientific **intended** to call S.B. The fact that S.B.'s number was reassigned without her clinic's or Boston Scientific's knowledge does not change the intent of the call or its substance.

**Third**, there is no dispute that the calls relate to "the individual health care needs of the patient recipient." *Zani*, 246 F. Supp. 3d at 851. Spine Works believed S.B. would benefit from an educational seminar about her "individual health care needs" (chronic pain), which is why it selected her to be invited. Mem. 5–6.

For these reasons, Boston Scientific's calls fall squarely within the Health Care Rule, and the prior express consent standard applies. *See Zani*, 246 F. Supp. 3d at 859–60; *Latner v. Mount Sinai Health Sys., Inc.*, 879 F.3d 52, 54–55 (2d Cir. 2018) (applying Health Care Rule).

### 2. The "prior express consent" standard is satisfied.

Plaintiff argues that even if the Health Care Rule applies, Boston Scientific has not shown through admissible evidence that S.B. provided prior express consent. But Plaintiff ignores what is necessary to show consent under the TCPA. The FCC has long noted that "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given." *See In the Matter of Rules & Regulations Implementing the TCPA*, 7 FCC Rcd. 8752, 8769 ¶ 31 (1992); *In the Matter of Rules & Regulations Implementing the TCPA*, 23 FCC Rcd. 559, 564 ¶ 9 (2008) (provision of cell number). Courts routinely find that prior express consent was given where the plaintiff provided a number in the course of receiving medical treatment. *See, e.g., Jackson v. Safeway, Inc.*, 2016 WL 5907917, at *10 (holding that defendant's "evidence establishes that Plaintiff provided her wireless phone number in connection with receiving flu shots").

To prove consent, therefore, Boston Scientific only needs to submit evidence that S.B. provided her number to Spine Works. And Dr. Jeff Phelps, a Spine Works physician, has personal knowledge that S.B. "provided her phone number at the time she filled out [Spine Works'] initial intake forms and indicated that this was a number at which Spine Works could contact her." *See* Mem. 6; Dkt. 63 ¶ 2. This is admissible evidence, and Plaintiff's hearsay argument fails.

### D. Boston Scientific reasonably relied on S.B.'s prior express consent.

Plaintiff last argues that Boston Scientific has not established that it "reasonably" relied on the consent provided by S.B. Opp. 11–13. But Plaintiff's view of "reasonable reliance" is far more demanding than the FCC has recognized and would "demand the impossible" of callers. Under the 2015 order, for example, "reasonable reliance" meant a one-call safe harbor, and under the

7

12/12/2018 FCC Order, "reasonable reliance" means checking a database of reassigned numbers. The Court should apply the FCC's guidance, not the inapposite case law that Plaintiff cites. Opp. 12, citing *Field v. Mans*, 516 U.S. 59, 77 (1995) (reliance in bankruptcy litigation); *In re MF Glob. Holdings Sec. Litig.*, 982 F. Supp. 2d 277, 322 (S.D.N.Y. 2013) (reliance in securities litigation).

Under the FCC's guidance, Boston Scientific's reliance was reasonable as a matter of law. It is undisputed that Boston Scientific did not know that the number had been reassigned. Dkt. 60, BSC's Statement of Undisputed Facts ("SUMF") ¶ 26; Dkt 80. Because Boston Scientific called patients pre-selected by their pain clinics, Boston Scientific relied on the accuracy of the information the clinics provided. SUMF ¶ 19. And because Boston Scientific never talked to Plaintiff directly, but instead delivered a prerecorded message, it could not have learned that the number had been reassigned from the calls themselves. In short, Boston Scientific "had no reason to know that the phone number had been reassigned," *Roark*, 2018 WL 5921652, at *3, and therefore reasonably relied on S.B.'s prior express consent.

**III.     Plaintiff Cannot Establish a Violation of the Federal Do-Not-Call Regulations.**

Finally, Plaintiff also cannot save his Do-Not-Call claim, for two independent reasons.

**First**, Plaintiff admits that he did not register his telephone number on the national Do-Not-Call list, Opp. 15, even though the Do-Not-Call regulation protects only a "telephone subscriber ***who has registered his or her telephone number*** on the" list. 47 C.F.R. § 64.1200(c) (emphasis added). Plaintiff asks this Court to ignore the plain language of the regulation because the TCPA gives "any person who has received" more than one call "in violation of the [FCC's] regulations" standing to sue. 47 U.S.C. § 227(c)(5). This argument is circular and unhelpful. A call does not violate the FCC's "regulations" unless the subscriber "has registered his or her telephone number" on the Do-Not-Call list. 47 C.F.R. § 64.1200(c). But Plaintiff did not "register his . . . number," so § 227(c)(5) does not give him standing. Plaintiff also cannot rely on the fact that "registrations" on

the Do-Not-Call list must be honored "indefinitely," because the reference is to a "subscriber who has registered his . . . number" on the Do-Not-Call list. *See id.* In other words, the person who registers the number never needs to re-register the number and is protected "indefinitely," but reassigned users (like Plaintiff) are not protected and must re-register upon reassignment. *Id.*

This distinction makes sense because, in the First Circuit, the Do-Not-Call regulations are viewed as a "narrowly tailored" "opt-in mechanism[]": they "restrict only calls that are targeted at unwilling recipients." *IMS Health, Inc. v. Mills*, 616 F.3d 7, 22 (1st Cir. 2010); *see also Mainstream Mktg. Servs., Inc. v. FTC.*, 358 F.3d 1228, 1243 (10th Cir. 2004) (the regulations "only block calls" for "consumers who have signed up for the list"). Here, Plaintiff did not even know his number was registered until his attorneys told him, SUMF ¶ 50, so he never "opt[ed] in" to the Do-Not-Call protections and is not the kind of "unwilling recipient[]" they were intended to cover. The Court should reject Plaintiff's out-of-circuit guidance and dismiss Plaintiff's claim on this basis alone.

**Second**, Plaintiff does not dispute that the calls never encouraged, either implicitly or explicitly, the purchase of any Boston Scientific product or service. No court has found this type of health care call made on behalf of a clinic to its patients to be a "telephone solicitation" violating the Do-Not-Call provisions. *See, e.g.*, *Friedman v. Torchmark Corp.*, 2013 WL 4102201, at *6 (S.D. Cal., August 13, 2013) ("it [is] not at all evident from the messages that Defendant is attempting to encourage Plaintiff to purchase [anything]").

Plaintiff asserts that the calls had a dual purpose, Opp. 17–18, but he ignores the relevant inquiry, which is whether the "calls at issue . . . demonstrate a prohibited advertising purpose." *See Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012). The calls here "demonstrate" no such thing. Unlike in *Chesbro*, the calls contained no "implication" of future purchases, much less one that is "clear from the context." *See id.*; *Dolemba v. Ill. Farmers Ins. Co.*, 2015 WL 4727331, at *5 (N.D. Ill. 2015) (the call "did not explicitly or *implicitly* encourage" any purchase). Both the content

9

and context of the calls are undisputed: they invited Spine Works' patients to a seminar discussing treatment options for chronic pain; they did not market Boston Scientific products and services.

Moreover, even looking beyond the context of the calls to the context of the seminar supports Boston Scientific's argument. The unrebutted evidence from Spine Works is that "the purpose of the seminar was not to 'market' any Boston Scientific products." Dkt. 63 ¶ 4. Plaintiff does not dispute, further, that Dr. Joshua Hay from Spine Works determined the content of the relevant seminar and that Boston Scientific encouraged physicians who hosted events to discuss a variety of treatment options. SUMF ¶¶ 34, 36–39; Dkt. 62-11. Although Plaintiff suggests that the seminar was a pretext for selling Boston Scientific products, it is undisputed that no product was sold at the seminar and that whether any such product is right for a patient is a future decision solely between a doctor and the patient, without Boston Scientific's involvement. SUMF ¶¶ 40, 42.

In short, the link between the calls at issue and any ultimate purchase of a Boston Scientific product is simply "too attenuated" to render the calls "a telemarketing message." *See Broking v. Green Brook Buick GMG Suzuki*, 2017 WL 3610490, at *5 (D.N.J. Aug. 22, 2017); *Smith v. Blue Shield of Cal. Life & Health Ins. Co.*, 228 F. Supp. 3d 1056, 1067–68 (C.D. Cal. 2017) (an "overarching incentive to retain customers" was "too attenuated to give rise to a *clear*, unequivocal implication of advertising"); *Daniel v. Five Stars Loyalty*, 2015 WL 7454260, at *4 (N.D. Cal. Nov. 24, 2015) (even if it could be "reasonably inferred based on context" that purpose of text was to "encourage future purchases," the "degree of connection between communication and purchase" was "too attenuated to make the text telemarketing"). As a result, the calls inviting Plaintiff to an educational, health-related seminar were not made "for the purpose of encouraging the purchase" of "property, goods, or services," 47 C.F.R.§ 64.1200(f)(14), and Plaintiff's Do-Not-Call claim should be dismissed.

## CONCLUSION

The Court should dismiss Plaintiff's claims and enter judgment in favor of Boston Scientific.

10

Dated: August 29, 2019.

Respectfully submitted,

**BOSTON SCIENTIFIC CORPORATION**

By its attorneys,

*/s/ W. Daniel Deane*
W. Daniel Deane (BBO # 568694)
ddeane@nixonpeabody.com
Troy K. Lieberman (BBO # 681755)
tlieberman@nixonpeabody.com
NIXON PEABODY LLP
Exchange Place
53 State Street
Boston, MA 02109
T: (617) 345-1000
F: (617) 345-1300

Erin L. Hoffman (*pro hac vice*)
erin.hoffman@faegrebd.com
Nathan Brennaman (*pro hac vice*)
nate.brennaman@faegrebd.com
Faegre Baker Daniels LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota 55402-3901
T: 612-766-7000
F: 612-766-1600

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon all parties registered for electronic notification *via* the Court's electronic filing system on August 29, 2019.

*/s/ W. Daniel Deane*
W. Daniel Deane

11