**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

Case No. 1:18-cv-11826-NMG

**STEVEN SANDOE,** individually and on
behalf of all others similarly situated,

*Plaintiff*,

*v.*

**BOSTON SCIENTIFIC CORPORATION,**
a Massachusetts corporation,

*Defendant.*

---

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO STRIKE FACTS FROM PLAINTIFF'S CLASS CERTIFICATION REPLY AND REBUTTAL EXPERT REPORT OR, IN THE ALTERNATIVE, FOR LEAVE TO FILE A SUPPLEMENTAL REBUTTAL EXPERT REPORT AND SUR-REPLY BRIEF**

Boston Scientific's motion to strike portions of Plaintiff's expert Ms. Verkhovskaya's second supplemental report and facts from the second supplemental report incorporated in Plaintiff's class certification reply is based on two false premises. First, Boston Scientific mischaracterizes the reason Plaintiff's expert Ms. Verkhovskaya twice supplemented her expert report – i.e., errors in the data Boston Scientific supplied, and which Boston Scientific waited until Plaintiff's expert's deposition (on July 2, 2019) to disclose, and an inadvertent error in the computer code Plaintiff's expert wrote to apply her methodology for identifying wrong number class members to the class data sample.

Second, Boston Scientific's motion inaccurately argues that Ms. Verkhovskaya changed her methodology in the second supplemental report. She did not. Ms. Verkhovskaya's opinions which are succinctly stated in her original expert report remain the same and have not changed. She opines that it is possible, common and administratively feasible to reliably identify wrong number class members using her proposed methodology. To demonstrate the application of her

1

methodology, Ms. Verkhovskaya applied the methodology to a small subset of Boston

Scientific's class data.  Her second supplemental report simply corrected the inadvertent error in

the computer code applied in the first supplemental report so that the results of her analysis of

the class data sample would accurately reflect application of her methodology, which remained

unchanged from Ms. Verkhovskaya's first supplemental report (necessitated by late disclosed

errors in Boston Scientific's data, and which Boston Scientific is not seeking to strike).

Plaintiff's reply and Plaintiff's expert's second supplemental report do not introduce new

legal theories or new opinions.  To the contrary, Plaintiff's expert diligently worked to

supplement her report twice to correct two honest mistakes:  first, an error in the data Boston

Scientific supplied, and then, an error in Plaintiff's expert's computer code applying her

methodology to Boston Scientific's erroneous data.  Under these circumstances, Plaintiff's

expert's supplementation is appropriate, if not required.  The Court should therefore deny Boston

Scientific's request to strike Plaintiff's second supplemental report and references to it in

Plaintiff's class certification reply, and should instead allow Boston Scientific to file the

supplemental expert rebuttal report and class certification surreply it attaches to its motion to

strike to the extent the Court deems it appropriate.

## Background and Facts

Ms. Verkhovskaya's initial report in this litigation was completed and produced on June

21, 2019 in connection with Plaintiff's class certification motion.  August 9, 2019 Verkhovskaya

Report (D.E. 84-1) at ¶ 58.  Due to an error in the source data that Boston Scientific produced –

an error that was identified to Plaintiff by Boston Scientific for the first time at Ms.

Verkhovskaya's deposition on July 2, 2019 – a first supplemental report was completed in an

expedited fashion over the July 4, 2019 holiday weekend.  *Id*. This first supplemental report was

produced by Plaintiff to Boston Scientific on July 10, 2019.  *Id.*      The analysis in the first

supplemental report was intended to account for the error in the data supplied by Boston Scientific in applying Ms. Verkhovskaya's methodology for identifying wrong number class members.  *Id.* at ¶ 59.

As a result of reviewing Boston Scientific's expert's rebuttal report to the first supplemental report, Ms. Verkhovskaya identified an inadvertent error in the first supplemental report resulting from a simple error in the computer code written to apply Ms. Verkhovskaya's methodology to the sample of class data.  *Id*. at 60.  This computer code error resulted in Ms. Verkhovskaya inadvertently *including* rather than *excluding* certain name matches between the reverse telephone lookups she performed and the intended call recipients' names identified in Boston Scientific's sample data.  *Id.*  As a result of this coding error, a number of non-class members were included in the tallies and outputs identifying wrong number class members in the first supplemental report.  *Id.*

Ms. Verkhovskaya's second supplemental report, the expert report Boston Scientific now moves to strike, reflects the results of applying Ms. Verkhovskaya's methodology, as revised in the first supplemental report to address the error in Boston Scientific own data identified at Ms. Verkhovskaya's deposition, without the inadvertent error in the computer code reflected in the results of the first supplemental report.  *Id*. at 62.  Applying the exact same methodology as before, in the second supplemental report, Ms. Verkhovskaya found that in Boston Scientific's sample of class data there were 978 telephone numbers that were wireless, non-business "wrong number" telephone numbers, 416 telephone numbers that were landline, non-business "wrong number" telephone numbers, and 631 telephone numbers that were National Do Not Call Registry-qualified, non-business "wrong number" telephone numbers.  *Id.*

Moreover, in the second supplemental report, consistent with Ms. Verkhovskaya's initial report and first supplemental report, Ms. Verkhovskaya again concluded that Plaintiff was a wrong number class member. *Id*. at ¶¶ 51-57 and Ms. Verkhovskaya's June 21, 2019 Expert Report (D.E. 39-12) at ¶ 48. In fact, in every iteration of Ms. Verkhovskaya's report, the conclusion that Plaintiff was a wrong number class member was based on the application of a grace period "fuzzy" for the date a potential class member was first associated with a telephone number in Boston Scientific's class data, and was part of the methodology for identifying wrong number class members other than Plaintiff. August 9, 2019 Verkhovskaya Report (D.E. 84-1) at ¶ 56 (examples of individuals identified in Ms. Verkhovskaya's initial expert report as wrong number class members through application of the grace period).

Finally, Ms. Verkhovskaya's second supplemental report does not include a new "multiple user" analysis. It simply summarizes some of the underlying data resulting from accurately applying Ms. Verkhovskaya's methodology in connection with the second supplemental report.

As such, Ms. Verkhovskaya's second supplemental report, and Plaintiff's incorporation of the report in the class certification reply, do not constitute new legal theories or facts supporting them that should be stricken. Instead, the second supplemental report and reply reflect the accurate results from applying Ms. Verkhovskaya's methodology after resolving an error in Boston Scientific's data and an error in Ms. Verkhovskaya's computer code for applying her methodology to the data.

## MEMORANDUM OF LAW

### The Court Should Deny Boston Scientific's Request to Strike Portions of Ms. Verkhovskaya's Report and Citations to it in Plaintiff's Class Certification Reply

The Court should deny Boston Scientific's motion to strike portions of Ms. Verkhovskaya's second supplemental report and references to those portions in Plaintiff's class certification reply because Ms. Verkhovskaya's second supplemental report is consistent with her prior reports, was necessitated by an honest mistake in applying her methodology in the first supplemental report, and will not prejudice Boston Scientific, or impact the schedule.

"Under Federal Rule of Civil Procedure 26(e)(1), a party must supplement an expert report if it 'learns that in some material respect the disclosure or response is incomplete or incorrect.'" *Medtronic Vascular, Inc. v. Abbott Cardiovascular Sys.*, No. C-06-1066 PJH (EMC), 2008 U.S. Dist. LEXIS 112148, at *6 (N.D. Cal. Oct. 15, 2008) (citing Rule 26(e)(1)). "The expert witness discovery rules are designed to aid the court in its fact-finding mission by allowing both sides to prepare their case adequately and efficiently and to prevent the tactic of surprise from affecting the outcome of the case." *Orgler Homes, Inc. v. Chi. Reg'l Council of Carpenters*, No. 06 C 50097, 2008 U.S. Dist. LEXIS 106585, at *6-7 (N.D. Ill. Mar. 6, 2008). "Case law interpreting the rule reflects that a supplemental disclosure must be exactly that -- *i.e.*, a supplement. A party may not rely on Rule 26(e)(1) as a way to remedy a deficient expert report or as a means of getting in, in effect, a brand new report." *Medtronic Vascular*, 2008 U.S. Dist. LEXIS 112148, at *6.

In determining whether to strike a supplemental expert report, or a party's reliance on the substance of the supplemental report, district courts evaluate factors such as:

> (1) whether in the supplemental report the expert "reaches substantially the same conclusion as his [or her] original [r]eport";

(2) whether the supplemental report "merely corrects" subsequently identified mistakes in the original report resulting from "honest error";

(3) "prejudice or surprise to the party against whom" the supplemental report "is offered";

(4) "bad faith or willfulness involved in not disclosing the evidence at an earlier date";

(5) "the likelihood of disruption" to the schedule; and

(6) "the ability to cure."

*See, e.g., Tesoro Ref. & Mktg. Co. Llc v. Pac. Gas & Elec. Co.*, No. 14-cv-00930-JCS, 2016 U.S. Dist. LEXIS 5030 (N.D. Cal. Jan. 14, 2016); *Medtronic Vascular*, 2008 U.S. Dist. LEXIS 112148, at *6-8; *Orgler Homes*, 2008 U.S. Dist. LEXIS 106585, at *6-8.  Each of these factors supports denial of Boston Scientific's motion to strike.

Specifically, Ms. Verkhovskaya's second supplemental report:

(1) proposes the identical methodology as her first supplemental report (which Boston Scientific does not seek to strike, and which included a revised methodology only to address late disclosed errors reflected in Boston Scientific's sample class data);

(2) reaches substantially the same conclusions regarding the effectiveness of Ms. Verkhovskaya's proposed methodology for identifying wrong number class members as both of her prior reports;

(3) merely corrects an honest error in applying the proposed methodology to Boston Scientific's sample class data arising from an error in the computer code written to apply the methodology to the class data;

(4) was diligently produced on August 9, 2019 upon the discovery of the error in the first supplemental report first raised in Boston Scientific's rebuttal expert's original report;

(5) will not disrupt the schedule, because it was produced on August 9, 2019 and the class certification hearing is set for October 17, 2019; and

(6) is not prejudicial to Boston Scientific because its merits can be addressed through Boston Scientific's filing of the supplemental expert rebuttal report and class certification surreply that Boston Scientific has already prepared and attached to its motion to strike.

6

*See Tesoro Ref.*, 2016 U.S. Dist. LEXIS 5030, at * ("Because PG&E does not object to the use of the new 'base case' data related to the Load at Risk Notification, the Court also declines to strike Rahman's analysis of that data, which reaches substantially the same conclusion as his original Report—that Fiala reasonably concluded that the Cogen would trip offline if the Substation became islanded."); *Medtronic Vascular*, 2008 U.S. Dist. LEXIS 112148, at *7-8 (The "original report is not patently inadequate. It is twenty-seven pages in length; provides details about Dr. Eberhart's methodology; and reflects Dr. Eberhart's efforts to … analyze the results. The need to supplement the original report came about because, during his deposition, Abbott pointed out that there were numerical errors on which Dr. Eberhart based his findings. These errors appear to have been nothing more than honest mistakes …. The supplemental report merely corrects these mistakes; it does not attempt to mask inadequate preparation of the original report. Second, the supplemental report is not an attempt by Medtronic to ambush Abbott because the report merely corrects numerical errors. The supplemental report does not constitute a substantive revision of Dr. Eberhart's original report nor does it offer new opinions or conclusions. Thus, Dr. Eberhart's supplemental report is a proper supplemental disclosure under Federal Rule of Civil Procedure 26(e)(1)."); *Orgler Homes*, 2008 U.S. Dist. LEXIS 106585, at *8-10 (allowing plaintiff's supplementation of expert report "to the extent that it sought to correct the corrupted data present in plaintiff's original expert report").

The cases Boston Scientific relies on in its motion do not change these conclusions or even apply to the issue presented here regarding whether Plaintiff's expert's supplementation was appropriate under the circumstances. *See, e.g., Hilsinger Co. v. Kleen Concepts, LLC*, No. 14-14714-FDS, 2017 U.S. Dist. LEXIS 141659, at *19-21 (D. Mass. Sep. 1, 2017) ("Here, defendant's reply brief presented an entirely new legal theory concerning the co-branding of

SHIELDME and KLEENME products, as well as an affidavit containing new facts that it argued were 'undisputed.' Furthermore, plaintiff contends that despite defendant's representations, those new facts are disputed.").

The Court should therefore deny Boston Scientific's motion to the extent it requests to strike portions of Ms. Verkhovskaya's second supplemental report and portions of Plaintiff's class certification reply relying on the second supplemental report, and if it deems warranted, allow Boston Scientific to file the supplemental rebuttal expert report and class certification surreply it attaches as exhibits to its motion.

Dated: September 10, 2019

*/s/ Avi R. Kaufman*
Avi R. Kaufman (admitted pro hac vice)
kaufman@kaufmanpa.com
Kaufman P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881

Jason Campbell
jasonrcampbell@ymail.com
250 First Avenue, Unit 602
Charlestown, MA 02129
Telephone: (617) 872-8652

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on September 10, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, and it is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

*/s/ Avi R. Kaufman*
Avi R. Kaufman