**United States District Court**
**District of Massachusetts**

```
_____
                               )
Sandoe                         )
                               )
          Plaintiff,           )
                               )
          v.                   )     Civil Action No.
                               )     18-11826-NMG
Boston Scientific Corporation  )
                               )
          Defendant.           )
_____)
```

**MEMORANDUM & ORDER**

GORTON, J.

This case involves an alleged violation of the Telephone Consumer Protection Act ("the TCPA"), 28 U.S.C. § 227, by Boston Scientific Corporation ("Boston Scientific" or "defendant") regarding prerecorded voice calls made to more than 200,000 phone numbers between 2014 and 2018.

The named plaintiff, Steven Sandoe ("Sandoe" or "plaintiff"), received two prerecorded calls from Boston Scientific, one in June, 2018 and one in July, 2018.

Pending before the Court is the motion of plaintiff to certify two classes of similarly situated individuals (Docket Entry No. 39) and the motion of plaintiff to strike the expert testimony upon which Boston Scientific relies in opposing class certification (Docket Entry No. 85).

- 1 -

I.    **Background**

Boston Scientific is a medical device manufacturer and a
healthcare company that partners with health care clinics to
host educational seminars for clinic patients.  Relevant to this
case, Boston Scientific partnered with a number of pain
management clinics from 2014 through 2018 to host several "Focus
on Diagnosis" seminars (collectively, "the Seminars") to educate
clinic patients about treatment options for chronic pain
management.

Boston Scientific provided varying levels of support for
each Seminar depending on the needs of the hosting clinic.  For
instance, some clinics chose to host a Seminar with minimal or
no assistance from Boston Scientific whereas others wanted
assistance with, among other things, inviting patients, renting
space and advertising.  A representative from Boston Scientific
was typically present at each Seminar, but a physician from the
host clinic would present at the Seminar.  Presenting physicians
would sometimes discuss the products of Boston Scientific and
other medical device manufacturers.  Boston Scientific did not
sell its products at the Seminars.

A. **The Calls**

Boston Scientific began offering to make invitation calls
for the Seminars on behalf of partner clinics in late 2014.
It partnered with two vendors to transmit prerecorded voice
messages inviting clinic patients to the Seminars.  Boston
Scientific was involved in providing guidance as to which
patients the clinics should invite but the ultimate list of
invitees was the decision of the clinic physicians.

The prerecorded invitations were recorded by the physician
scheduled to speak at the Seminar, a clinic staff member or a
Boston Scientific representative.  Boston Scientific provided a
standard script which did not include reference to itself.  When
a Boston Scientific representative recorded the call, however,
he or she was typically identified as affiliated with that
company.

Boston Scientific made between one and three calls to each
invitee.  If an individual answered the first call and responded
affirmatively or negatively, he or she did not receive any
additional calls.

B. **The Named Plaintiff**

Plaintiff Steven Sandoe received two prerecorded messages
at his cell phone number intended for S.B., a patient of Spine

Works Institute ("Spine Works"). Spine Works partnered with Boston Scientific to host a Seminar in July, 2018, and intended to invite S.B. The telephone number S.B. had provided to Spine Works, however, had been reassigned to Mr. Sandoe.

Mr. Sandoe testified that he answered both calls and called Spine Works to request that it stop calling him. Plaintiff's phone records do not, however, show any outbound calls to Spine Works.

At the time Mr. Sandoe received the two prerecorded calls, his number was listed on the National Do-Not-Call Registry. Plaintiff testified that he did not register the number and only learned that it was on the National Do-Not-Call Registry from his attorneys in connection with this case.

C. **The Classes**

Plaintiff Mr. Sandoe seeks certification of the following two classes:

> **Prerecorded No Consent Class:** All persons in the United States who from four years prior to the filing of this action through the present (1) Defendant (or an agent acting on behalf of Defendant) called, (2) using a prerecorded voice message, (3) where such person was not listed in Defendant's records as the intended recipient of the call.

> **Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through the present (1) Defendant (or an agent acting on behalf of Defendant) called more than one

time, (2) within any 12-month period, (3) where the
person's telephone number had been listed on the
National Do Not Call Registry for at least thirty
days, (4) to invite them to a Boston Scientific
educational event, (5) where such person was not
listed in the Defendant's records as the intended
recipient of the call.

### D. **Plaintiff's Class Identification Methodology**

Plaintiff proffers expert Anya Verkhovskaya ("Ms.
Verkhovskaya" or "plaintiff's expert") to testify regarding the
following process she used to identify proposed class members:

1. She provided a list of Boston Scientific's intended call
   recipients to TransUnion, a consumer credit reporting
   agency, to apply its proprietary algorithm to link names
   and addresses to each phone number during the specified
   timeframe ("the reverse-append process").

2. She compared the identified names and addresses with
   Boston Scientific's list of intended call recipients to
   identify "wrong numbers".  Ms. Verkhovskaya applied a
   six-month "fuzzy" grace period which presumes the
   individual called was the user of a number at the time of
   Boston Scientific's call if he or she was associated with
   that number within six months of the call.

3. She analyzed whether the numbers were associated with
   cell phones or landlines.

4. She processed the "wrong number" results through
   LexisNexis' business-identification query to determine
   whether any of the identified numbers were registered to
   businesses.

5. She compared the "wrong numbers" with the National Do-
   Not-Call Registry.

After twice supplementing her report (the first report
contained an error in the data and the second report contained a

glitch in the code) Ms. Verkhovskaya identified as wrong numbers approximately 15% of a sample set of 9,000 telephone numbers.

Boston Scientific submitted a rebuttal report of its expert, Mr. Jan Kostyun ("Mr. Kostyun" or "defendant's expert"), who opines that Ms. Verkhovskaya's methodology and analysis is unreliable, unsupportable, flawed and inconsistent. Specifically, Mr. Kostyun criticizes the reverse-append process as 1) failing properly to identify even the named plaintiff as a class member without individualized inquiry and 2) using the "fuzzy" period for no justifiable reason.  Mr. Kostyun ultimately concludes that Ms. Verkhovskaya's methodology cannot reliably identify members of the proposed classes.

### E. Procedural History

Mr. Sandoe commenced this action in August, 2018 by filing a complaint on behalf of himself and putative class members.  In June, 2019, he moved for class certification and submitted the supporting expert report of Ms. Verkhovskaya, which she supplemented shortly thereafter (Docket Entry No. 39). Defendant opposed class certification and proffered the rebuttal expert report of Mr. Kostyun (Docket Entry No. 70).  Plaintiff filed a reply brief and an additional expert report (Docket Entry No. 84) and separately moved to strike defendant's

proposed expert report (Docket Entry No. 85).  Defendant, in turn, moved to strike portions of plaintiff's reply or, in the alternative, for leave to file a surreply, on the grounds that plaintiff had improperly introduced new arguments and expert analysis (Docket Entry No. 96).  The Court denied defendant's motion to strike but granted leave to defendant to file a surreply brief and expert report (Docket Entry No. 115).

In July, 2019, defendant moved for summary judgment (Docket Entry No. 58).  Plaintiff, in response, moved for the Court to deny or defer ruling on the motion for summary judgment until after resolving class certification or, in the alternative, after permitting additional discovery (Docket Entry No. 78).

On October 17, 2019, this Court convened a hearing on plaintiff's motion for class certification.

## II.  **Plaintiff Motion for Class Certification**

### A.  **The TCPA**

The TCPA prohibits the transmission of any call using a prerecorded voice to a cellular or residential telephone number without "prior express consent" of the called party. 47 U.S.C. § 227(b)(1)(A), (B).  The Federal Communications Commission ("FCC"), under the authority delegated to it by Congress, has clarified that for prerecorded telemarketing calls to a cell

phone or landline, "prior express written consent" is required. 47 C.F.R. § 64.1200(a)(2).  For health care messages to cell phones "prior express consent" is required but for health care messages to residential landlines, no consent is required. 14 C.F.R. § 64.1200(a)(2) and (a)(3)(v).  Moreover, prerecorded calls to business landlines do not violate the TCPA. 47 U.S.C. § 227(b)(1)(B).

The TCPA also prohibits making telephone solicitations to an individual "who has registered his or her telephone number on the national do-not-call registry." 47 C.F.R. § 64.1200(c).

### B.  Rule 23

Under Federal Rule of Civil Procedure 23, a court may certify a class only if it finds that the proposed class satisfies all the requirements of Rule 23(a) and that class-wide adjudication is appropriate for one of the reasons set forth in Rule 23(b). See Smilo v. Sw. Bell Mobile Sys., Inc., 323 F.3d 32, 38 (1st Cir. 2003).

Rule 23(a) requires that a class meet the following four criteria:

1)  the class is so numerous that joinder of all members is impracticable;

2)  there are questions of law or fact common to the class;

3)   the claims or defenses of the representative
     parties are typical of the claims or defenses of
     the class; and

4)   the representative parties will fairly and
     adequately protect the interests of the class.

Fed. R. Civ. P. 23(a)(1)-(4).

A district court must conduct a "rigorous analysis" under Rule 23 before certifying the class. Smilo, 323 F.3d at 38.  The Court may look behind the pleadings, predict how specific issues will become relevant to facts in dispute and conduct a merits inquiry only to the extent that the merits overlap with the Rule 23 criteria. In re New Motor Vehicles Canadian Exp. Antitrust Litig., 522 F.3d 6, 20 (1st Cir. 2008).

Plaintiff seeks to certify both classes under Rule 23(b)(3) which requires that common questions of law or fact "predominate" over those affecting individual class members and that a class action be the "superior" method for fair and efficient adjudication.

C.   **Application**

Even if both proposed classes were to satisfy the requirements of Rule 23(a), plaintiff has failed to demonstrate that the members of the proposed classes are ascertainable and that common issues predominate under Rule 23(b)(3).

### 1.   Ascertainability

Implicit in Rule 23 is consideration of whether the identification of potential class members is "administratively feasible." Shanley v. Cadle, 277 F.R.D. 63, 67 (D. Mass. 2011). All class members need not be identified at the outset but the class must be determinable by "stable and objective factors." Id. A class cannot be certified under Rule 23 when class members are "impossible to identify prior to individualized fact-finding and litigation." Crosby v. Social Sec. Admin., 795 F. 2d. 576, 580 (1st Cir. 1986). At the time of certification, the district court must offer a "reasonable and workable" plan for how the plaintiff will prove class membership in a manner that is protective of the defendant's rights and does not cause individual inquiries to "overwhelm" common issues. In re Asacol Antitrust Litigation, 907 F.3d 42, 58 (1st Cir. 2018).

The parties' experts dispute whether it is possible to identify the individuals who actually received telephone calls from Boston Scientific on a class-wide basis. Defendant's expert emphasizes that there is no centralized database linking individual subscribers to phone numbers and that the private databases used by plaintiff's expert are inaccurate and unreliable. As evidence of such unreliability, defendant's

expert submits that the reverse-append process does not even identify plaintiff as a class member.  Indeed, the databases utilized by plaintiff's expert do not associate plaintiff with the telephone number called by Boston Scientific until after Boston Scientific's calls.  Plaintiff is identified as the individual actually called by Boston Scientific only by application of the six-month fuzzy period and by virtue of individual testimony or analysis of plaintiff's phone records.

Notably, this is not the first time plaintiff's expert, Ms. Verkhovskaya, has faced criticism that her reverse-append process failed to identify the named plaintiff in a putative class action under the TCPA. See Wilson v. Badcock Home Furniture, 329 F.R.D. 454, 457 (M.D. Fla. 2018) (explaining that Ms. Verkhovskaya's analysis did not identify the named plaintiff as a class member without individualized inquiry).

Defendant also points to several other inconsistencies in Ms. Verkhovskaya's three reports (original, supplemental and rebuttal).  For example, defendant contends that 1) 60% of the names identified by Ms. Verkhovskaya as wrong numbers in her supplemental report were not identified as wrong numbers in her original report and 2) up to 59% of the numbers identified as wrong numbers in Ms. Verkhovskaya's rebuttal report are "exact

matches" to last names on Boston Scientific's list of intended recipients.

Also problematic is Ms. Verkhovskaya's inconsistent use of the so called "fuzzy" period.  In her rebuttal report, Ms. Verkhovskaya claims that she consistently applied the fuzzy period as a class-wide methodology and as a means of identifying plaintiff as an offended party.  Ms. Verkhovskaya testified, however, that the fuzzy period is not applied if any other name associated with a telephone number during the relevant time period belongs to the intended recipient of the call.  As emphasized by defendant's expert, according to the databases utilized by Ms. Verkhovskaya, plaintiff's number was associated with S.B., the intended call recipient, within six months of Boston Scientific's calls.  More troublesome still, Ms. Verkhovskaya provides no support for her use of the "fuzzy" period which defendant's expert challenges as unsupportable.

Plaintiff assures the Court that any discrepancies between identified wrong numbers and intended recipients can be resolved by a self-attestation process whereby each member of the proposed classes would assert 1) whether he or she was the user of the number in question on the date of Boston Scientific's

call and 2) whether he or she registered the number on the National Do-Not-Call Registry.

The First Circuit Court of Appeals has stated that unrebutted testimony contained in affidavits is sufficient to identify proposed class members.  See In re Nexium Antitrust Litigation, 777 F.3d 9, 21 (1st Cir. 2015).  Where testimony is genuinely challenged and relevant to an element of a party's affirmative case, however, a class cannot be certified without providing the defendant an opportunity to litigate its defenses. In re Asacol Antitrust Litigation, 907 F.3d at 53.

Here, consent is a defense to the TCPA claim of each member of the putative class.  Defendant has a right to challenge, and has expressly stated its intention to do so, any submitted affidavits purporting to self-identify as class members on the ground of consent.  See, e.g., Wilson, 329 F.R.D. at 459-60.  As a result, the challenged affidavits would be inadmissible and each of the thousands of putative class members would be subject to cross-examination at trial.  Such a procedure has been expressly rejected in this Circuit as a means for identifying class members. See In re Asacol Antitrust Litigation, 907 F.3d at 58.

Although this Court is convinced that plaintiff has failed to establish that the proposed classes are ascertainable, it need not definitively resolve that issue because it finds that plaintiff has not demonstrated that common issues predominate under Rule 23(b)(3).  See Wilson, 329 F.R.D. at 459 (noting a "general reluctance by many courts to deny class certification because of administrative difficulties").

### 2.   Rule 23(b)(3)

Plaintiff seeks certification of both classes under Rule 23(b)(3) which requires that 1) common questions predominate and 2) a class action is the superior method of adjudication.  Fed. R. Civ. P. 23(b)(3).

Common questions of law or fact predominate over individual questions if liability and damages can be established through common proof. In re Nexium Antitrust Litigation, 777 F.3d at 18. The Court must formulate some prediction as to how specific issues will be resolved to determine whether common issues predominate. See In re New Motor Vehicles, 522 F.3d at 20.

Here, plaintiff has not met his burden of demonstrating that common issues predominate.  As discussed above, consent is a defense under the TCPA. 47 U.S.C. § 227(b)(1)(A), (B).  The universe of potential class members includes only individuals

- 14 -

who are associated with telephone numbers that Boston Scientific
and its partner clinics believed to be registered to clinic
patients.  This is not a case where the defendant engaged in
"random robocalling."  Wilson, 329 F.R.D. at 460.  Indeed,
plaintiff does not dispute that intended recipients are excluded
from the potential class.

At oral argument, plaintiff argued that the reverse-append
process combined with analysis of subpoenaed phone records can
be utilized to determine which numbers were "wrong numbers" and
therefore associated with nonconsenting recipients.  Putting
aside the inconsistencies identified by defendant and its expert
which cast doubt on Ms. Verkhovskaya's ability reliably to
identify wrong numbers, defendant would still have a potential
consent defense against each class member.

For example, defendant's expert has proffered that up to
75% of cell phone carrier plans are friends and family plans
meaning that a single subscriber is associated with multiple
phone numbers.  The individual users of the associated numbers
sometimes do and sometimes do not share a last name with the
subscriber.  As a result, defendant has a unique potential
consent defense against every proposed class member, and, for

the reasons discussed above, plaintiff cannot rely on affidavits to establish lack of consent.

Plaintiff has also failed to demonstrate that common proof can be used to establish 1) whether the varying messages for each of the Seminars were health care messages or telephone solicitations, 2) whether a landline or a cell phone was called, 3) whether the prerecorded message was actually transmitted and 4) whether the individual who received the call was the individual who registered his or her name on the Do-Not-Call Registry.

Accordingly, plaintiff has not satisfied its burden of demonstrating that common issues predominate under Rule 23(b)(3).

## III. **Plaintiff's Motion to Strike**

Plaintiff moves to strike the testimony of Boston Scientific's proposed expert Mr. Kostyun (Docket Entry No. 85). Under Federal Rule of Evidence 702, an expert may testify in the form of opinion or otherwise if:

    a)    the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

    b)    the testimony is based on sufficient facts or data;

c)   the testimony is the product of reliable
     principles and methods; and

d)   the expert has reliably applied the principles
     and methods to the facts of the case.

Fed. R. Evid. 702.

Expert testimony should be excluded only if it is so "fundamentally unsupported that it can offer no assistance to the jury." Pac. Indem. Co. v. Dalla Pola, 65 F. Supp. 3d 296, 302 (D. Mass. 2014) (internal citations omitted).  Defendant has demonstrated that Mr. Kostyun's testimony is sufficiently relevant and reliable to qualify as expert testimony under Rule 702. See Daubert v. Merrell Dow Pharms., 509 U.S. 579, 589 (1993).  Mr. Kostyun has 35 years of experience in the telecommunications industry and has submitted expert testimony on TCPA issues in federal courts during the past ten years. Moreover, Mr. Kostyun employed virtually the same methodology as plaintiff's expert but reached a contrary conclusion based on testing the opinions of plaintiff's expert against publicly accessible resources.  Accordingly, plaintiff's motion to strike Mr. Kostyun's testimony will be denied.

**ORDER**

For the forgoing reasons, the motions of plaintiff are,

a. with respect to class certification (Docket Entry No. 39), **DENIED**; and

b. with respect to striking defendant's expert testimony (Docket Entry No. 85), **DENIED**.


**So ordered.**


/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated October 23, 2019